UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN BRUSH MANUFACTURER'S ASSOCIATION, INC., a Pennsylvania corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| ABRASIC 90 INC., a Delaware corporation, d/b/a CGW CAMEL GRINDING WHEELS, USA, | ) ) ) | |
| Defendant. | ) ) ) | |

**COMPLAINT FOR COPYRIGHT
INFRINGEMENT & TRADEMARK INFRINGEMENT**

JURISDICTION AND PARTIES

1.     Plaintiff, American Brush Manufacturer's Association (hereafter "ABMA"), is a Pennsylvania corporation with its principal place of business in Aurora, IL, USA.

2.     On information and belief, Defendant, Abrasic 90 Inc., is a Delaware corporation doing business as CGW Camel Grinding Wheels, USA, (hereafter "Camel"), with its principal place of business in Niles, IL, USA, and is doing business in the State of Illinois and in this judicial district.

3.     This Court's jurisdiction arises (a) from the fact this is an action brought under the Copyright laws of the United States, 17 U.S.C.A. §101, *et seq.*, jurisdiction conferred by 28 U.S.C.A. §1338(a), and under the Trademark Laws of the United States, 15 U.S.C. §§1051 – 1129, jurisdiction conferred by 15 U.S.C.A. §1121 and 28 U.S.C.A. §§1331 and 1338; and (b) from the fact that Plaintiff's claims arising under the laws of the State of Illinois form the same case or controversy and derive from a common nucleus of operative fact as the Federal law claims, and therefore jurisdiction is conferred by 28 U.S.C.A. §1367(a).

FACTS

4.     ABMA is a trade association comprised of individuals in the brush manufacturing industry in the United States, Mexico and Canada.

5.     ABMA serves to provide a forum in which brush manufacturers can obtain industry knowledge, network, and as an organization promote awareness of the benefits of high-quality North American made brooms, bushes, mops and similar products.  ABMA also contains various subcommittees, one of which, the Safety and Standards committee, works to develop safety standards for power-driven brushing tools.

6.     The Safety and Standards committee has developed the American Brush Manufacturer's Summary of Safety Requirements ("the safety slip") for power-driven brushing tools, which it published on September 2, 2010.  The brochure in which the slips were published contained standards on safety requirements for the design, care and use of power-driven brushing tools that meet the requirements of the American National Standards Institute.  A copy of the safety slip is attached hereto as Exhibit A.

7.     ABMA licenses the safety slips to be reproduced and packaged with products that meet its quality assurance and safety standards.  Manufacturers and Vendors throughout the United States may purchase the licensing rights to the safety slips and package and sell them with their products.

8.     ABMA has registered the mark "ABMA," for the American Brush Manufacturer's Association, Inc., in the United States Patent and Trademark Office, Reg. No. 3,186,484. That registration has become incontestable in accordance with 15 U.S.C. §§1065 and 1115(b). A copy of this federal trademark registration is attached hereto as Exhibit B.

9.    By virtue of ABMA's continued use, advertising, and promotion, its name and mark became and still are distinctive, well-recognized, and famous, possess a strong secondary meaning, and represent an extremely valuable goodwill.

10.    Since the date that it was published, the safety slip has been marked with the copyright symbol, as described in 17 U.S.C.A. 401(b)1, the word "copyright," the year of publication, and the name American Brush Manufacturer's Association.

11.    Effective May 20, 2011, the copyright for the safety slips was registered with the United States Copyright Office, Registration number TX 7-379-471, and a Certificate of Registration was issued. A copy of the Certificate is attached hereto as Exhibit C.

<u>DEFENDANT'S UNLAWFUL ACTIVITIES</u>

12.    On information and belief, Defendant, Camel, manufactures and sells industrial wire brushes, among other things, in various different states.

13.    On information and belief, Camel has been enclosing an exact replica of the safety slips affixed with ABMA's trademark in the packaging of its industrial wire brushes.

14.    Camel did not obtain the right to copy and reproduce the safety slips, nor did it obtain the right to use ABMA's trademark, before reproducing and packaging the safety slips with its products for sale.

15.    On information and belief, Camel has continued to package its products with the safety slips, despite its knowledge that the safety slips are copyrighted material, and has continued to affix ABMA's trademark to the safety slips.

16.    Defendant's use of the safety slips and the ABMA trademark is without the consent or authorization of ABMA, and infringes on ABMA's trademark and its copyright of the safety slips.

## COUNT I
## COPYRIGHT INFRINGEMENT

17.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 16 as though fully set forth herein.

18.     As alleged herein, ABMA recently became aware that Camel was reproducing the safety slips and placing them inside the packaging with its industrial wire brushes, even though it had not sought permission to reproduce the safety slips or paid the licensing fee required to do so.

19.     The safety slips that Camel enclosed with its industrial wire brushes are identical in both content and form to the safety slip copyrighted by the ABMA. Furthermore, the safety slip produced by Camel bears the ABMA trademark, as well as the ABMA mark of copyright.

20.     Camel had access to the safety slips, as they were published in the American National Standards Institute brochure on September 2, 2010 and available for widespread distribution.

21.     An ordinary observer would not be able to distinguish ABMA's safety slips from the safety slips produced by Camel, nor conclude that Camel lawfully appropriated ABMA's safety slips, as Camel's slips are an exact replica of ABMA's safety slips.

22.     On January 26, 2011, ABMA sent Camel a Cease and Desist letter, wherein it demanded that Camel cease its unauthorized copying and reproduction of the safety slips. Camel did not respond to the letter.

23.     It has come to ABMA's attention that Camel is still reproducing the copyrighted safety slips and inserting them in the packaging with its industrial wire brushes.

24.     Pursuant to 17 U.S.C.A. 410(c), ABMA's registration of its copyright within five years of the date of publication is prima facie evidence that ABMA's copyright is valid.

25. As alleged herein, Camel has never obtained permission from ABMA to copy and reproduce the safety slips, nor has it paid the licensing fee to do so.

26. Camel's unauthorized reproduction of the copyright is willful, and not innocent, as it had knowledge that it was reproducing copyrighted material since the safety slips were identified as being copyrighted by ABMA, in accordance with 17 U.S.C.A. 401(b)1.

27. Furthermore, Camel continued to reproduce the slips after receiving the cease and desist letter from ABMA.

28. As ABMA's copyright of the safety slips is registered with the United States Copyright Office, Camel's continued reproduction of the safety slips entitles ABMA to damages pursuant to 17 U.S.C.A. 401(b)1.

WHEREFORE, Plaintiff prays for a judgment:

(A) Permanently enjoining and restraining Defendant, its officers, agents, employees, representatives, and all others acting in concert or participation with any of them from unlawfully copying and reproducing the safety slips;

(B) Ordering the impounding of all copies of the safety slips produced by Camel;

(C) Directing Defendant to:

1) account for and pay over to Plaintiff all actual damages and any derived by Defendant from its acts complained of herein, together with prejudgment interest;

2) pay to Plaintiff statutory damages for Defendant's willful infringement of Plaintiff's copyright;

3) pay to Plaintiff its attorneys' fees and costs in this action; and

(D) Awarding Plaintiff such further relief as this Court deems just and equitable.

COUNT II
TRADEMARK INFRINGEMENT
AND FALSE DESIGNATION OF ORIGIN

29.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 28 as though fully set forth herein.

30.     As a result of its unauthorized use of the registered trademark of ABMA in connection with its manufacture, advertising, and sale of industrial wire brushes, Defendant is likely to cause confusion or mistake or to deceive the public, in violation of the Trademark Laws of the United States, 15 U.S.C. §1114.

31.     As a result of its unauthorized use of ABMA's trademark in connection with its manufacture, advertising, and sale of industrial wire brushes, Camel is likely to mislead prospective purchasers as to the affiliation, connection, or association of Camel or Camel's products with ABMA, or as to the origin, sponsorship or approval of Camel's industrial wire brushes by ABMA, causing purchasers to rely thereon, in violation of the Lanham Act, 15 U.S.C. §1125(a).

32.     Defendant's acts were undertaken in bad faith and in a deliberate attempt to capitalize on the goodwill and reputation of ABMA and ABMA's trademark and to mislead the public into believing that there is a connection, affiliation, or association between Camel and ABMA.

33.     Further, by packaging the safety slips with the industrial wire brushes, Camel deliberately intended to mislead the public into believing that its industrial wire brushes met all of the safety standards and requirements developed by ABMA, and that ABMA approved of Camel's industrial wire brushes.

34.     By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain loss of revenues and profits.

35.     Unless enjoined by this Court, Defendant will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiff, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for a judgment:

(A)     Permanently enjoining and restraining Defendant, its officers, agents, employees, representatives, and all others acting in concert or participation with any of them from:

    1)     using Plaintiff's trademark or any other colorable imitation of the mark, or any mark that is confusingly similar to the mark; and

    2)     doing any other act or thing likely to induce the belief that Defendant's business or products are in any way connected with Plaintiff or its products, or are sponsored or approved by Plaintiff.

(B)     Directing Defendant to:

    1)     account for and pay over to Plaintiff all profits derived by Defendant from its acts complained of herein, together with prejudgment interest;

    2)     pay to Plaintiff all the damages it has suffered as a result of the acts of Defendant complained of herein, including an assessment of trebled actual damages, together with prejudgment interest;

    3)     pay to Plaintiff its attorneys' fees and costs in this action; and

    4)     file with this Court and serve on Plaintiff's counsel, within 30 days after entry of an injunction issued by this Court, a sworn written statement as provided in 15 U.S.C. §1116.

(C)     Awarding Plaintiff such further relief as this Court deems just and equitable.

COUNT III
STATE AND COMMON LAW
UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES

36. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 35 as though fully set forth herein.

37. As a result of its unauthorized use of the ABMA's mark in connection with the advertising and sale of industrial wire brushes, Camel is likely to cause confusion or to cause mistake or to deceive the public, in violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

38. Camel is likely to mislead prospective purchasers and retailers as to an affiliation, connection, or association of Camel or its industrial wire brushes with ABMA or its ABMA-branded safety slips, or as to the origin, sponsorship, or approval by ABMA of Camel's industrial wire brushes, causing purchasers to rely thereon, in violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

39. Defendant's acts were undertaken in bad faith and in a deliberate attempt to capitalize on the goodwill and reputation of ABMA and its trademark, and to mislead the public into believing that there is a connection, affiliation, or association between Camel or its industrial wire brushes and ABMA and its safety slips and quality assurance standards.

40. By reason of Defendant's acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain loss of revenues and profits.

41. Unless enjoined by this Court, Defendant will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiff, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for a judgment:

(A)     Permanently enjoining and restraining Defendant, its officers, agents, employees, representatives, and all others acting in concert or participation with any of them from:

       1)     infringing use of Plaintiff's trademark; and

       2)     doing any other act or thing likely to induce the belief that Defendant's business or products are in any way connected with Plaintiff or its products, or are sponsored or approved by Plaintiff.

(B)     Directing Defendant to:

       1)     account for and pay over to Plaintiff all profits derived by Defendant from its acts complained of herein, together with prejudgment interest;

       2)     pay to Plaintiff all the damages it has suffered as a result of the acts of Defendant complained of herein, together with prejudgment interest;

       3)     pay to Plaintiff its attorneys' fees and costs in this action; and

       4)     deliver or destroy all articles bearing the infringing mark.

(C)     Awarding Plaintiff such further relief as this Court deems just and equitable.

AMERICAN BRUSH
MANUFACTURERS ASSOCIATION,
Plaintiff

By:   /s/ Peter K. Wilson
           One of its attorneys

Mr. Peter K. Wilson/03035689
Mr. Gary K. Mickey/1905007
Mr. Bernard K. Weiler/3128608
Ms. Catherine E. Malesky/6297098
MICKEY, WILSON, WEILER, RENZI & ANDERSSON, P.C.
2111 Plum Street, Suite 201
P.O. Box 787
Aurora, IL 60507-0787
Telephone: 630-801-9699
Fax: 630-801-9715

 

 

**READ THIS SAFETY SLIP - BOTH SIDES**

Avoid Injury
Observe Brush Safety Rules

**WARNING:** All operators must read, study and understand all warnings and operating instructions on the enclosed safety slip and those provided with your power tool, before using the brush!

*Deliver this Safety Slip with the brush to the operator. Keep this Safety Slip with the brush for the reference of future operators.*

**LISEZ CETTE NOTICE DE SÉCURITÉ - RECTO ET VERSO!**

Évitez les blessures. Respectez les règles de sécurité de ces brosses.

**AVERTISSEMENT :** La lecture, étudier et comprendre tous les avertissements et les instructions opérantes sur cette notice de sécurité ce fourni avec votre outil électrique avant d'utiliser cette brosse!

*Donnez cette notice de sécurité à l'utilisateur avec la brosse. Conservez cette notice avec la brosse pour les futurs utilisateurs.*

**LEA ESTA HOJA DE SEGURIDAD - EN AMBOS LADOS**

Evite lesiones, observe normas de seguridad del cepillo.

**LA ADVERTENCIA:** Lea, estudie y comprenda que todas las advertencias e instrucciones operadoras en el tropiezo encerrado de la seguridad y ésos proporcionado con su herramienta eléctrica antes de utilizar este cepillo!

*Facilite estas instrucciones de seguridad con el cepillo. Mantenga estas instrucciones de seguridad cerca del cepillo para la referencia de todos los operadores del cepillo.*

---

**WARNING:** failure to observe safety **INJURY** precautions may result in **INJURY**

**Summary - Power Brush Safety Requirements**

1. **Eye Protection:** Safety goggles or full face shields worn over safety glasses with side shields *MUST BE WORN by all OPERATORS and OTHERS IN THE AREA of power brush operations.* Comply with the requirements of ANSI Z87.1 "Occupational Eye and Face Protection."

2. **Guards:** Keep all machine guards in place.

3. **Speeds:** Observe all speed restrictions indicated on the brushes, containers, labels, or printed in pertinent literature. "MSFS" means Maximum Safe Free Speed (R.P.M.) - spinning free with no work applied. For reasons of safety the "MSFS" should not be exceeded under any circumstance.

4. **Safety Standard:** Comply with the Safety Standards of the Industrial Division of the American Brush Manufacturers' Association and the American National Standards Institute Standard ANSI B165.1 "Safety Requirements - Power Brushes".

5. **Protective Equipment:** Appropriate protective clothing and equipment (such as gloves, respirator, etc.) must be used where a possibility of injury exists that can be prevented by such clothing or equipment.

**Warning:** In normal power brushing operations, the material being removed, such as burrs, scale, dirt, weld slag, or other residue, will fly off the brush with considerable force along with the brush filaments which break off due to fatigue.

*The potential of serious injury exists for both the brush operator and others in the work area (possibly 50 or more feet from the brush).* To protect against this hazard, before rotating the brush, operators and others in the area must wear SAFETY GOGGLES or FULL FACE SHIELDS WORN OVER SAFETY GLASSES WITH SIDE SHIELDS, along with PROTECTIVE CLOTHING.

You must follow all operator and safety instructions, as well as common safety practices which will reduce the likelihood or severity of physical injury.

Many brush manufacturers mark some safety warnings, recommendations, and usage restrictions directly on the product. It is not always practical to include even the most limited safety information on the brush itself. Therefore, the operator MUST READ and FOLLOW all instructions supplied in or on the product container as well as those marked on the product itself. The operator should also refer to the safety and operating information printed in the brush manufacturer's catalog and other literature.

**READ THIS SAFETY SLIP—BOTH SIDES!**

---

**ATTENTION** le non-respect des précautions de sécurité peut provoquer des **BLESSURES**

**Résumé - Conditions de sécurité pour brosses électriques**

1. **Protection Oculaire:** des lunettes protectrices ou des lunettes de sécurité surmontées d'un masque avec écrans protecteurs latéraux DOIVENT ÊTRE PORTES PAR TOUS LES UTILISATEURS ET PERSONNES DANS LA ZONE DE TRAVAIL autour des brosses à électriques. Conformez-vous aux spécifications de la norme ANSI Z87.1 "Protection des yeux et du visage dans le cadre du travail".

2. **Dispositifs de protection:** laissez tous les dispositifs de sécurité de la machine en place.

3. **Vitesses:** respectez les limitations de vitesse indiquées sur les brosses, les emballages et les étiquettes ou dans les ouvrages spécialisés. "VLMS" (MSFS) signifie Vitesse Libre Maximum de Sécurité (R.P.M.) – c-à-d. rotation libre sans effort. Pour des raisons de sécurité, le "VLMS" (MSFS) ne doit être dépassée en aucune circonstance.

4. **Normes de sécurité:** observez les normes de sécurité de la Division industrielle de l'Association américaine des fabricants de brosses et les normes ANSI B165.1 "Exigences de Sécurité - Brosses à Moteur".

5. **Equipement de protection:** des vêtements et des équipements de protection appropriés (tels que gants, respirateur, etc.) doivent être portés s'ils peuvent réduire les risques de blessure.

**Avertissement:** pendant le fonctionnement normal des brosses électriques, des filaments usés ainsi que des matériaux enlevés tels que les ébarbures, les écailles, la saleté, les scories de soudage ou autres résidus se détachent de la brosse et sont expulsés avec une force considérable.

*Un risque de blessure sérieuse existe à la fois pour l'utilisateur et pour les personnes dans un rayon de 15 mètres ou plus autour de la brosse.* Pour limiter ce risque, les utilisateurs et autres personnes dans la zone de travail doivent, avant de mettre la brosse en marche, porter des LUNETTES PROTECTRICES ou un ÉCRAN FACIAL COMPLET PAR DESSUS LES LUNETTES DE SÉCURITÉ AVEC PROTECTEURS LATÉRAUX, ainsi que des VÊTEMENTS DE PROTECTION.

Vous devez suivre toutes les instructions d'utilisation et de sécurité, ainsi que les règles de sécurité de utilisation qui réduisent l'éventualité ou la gravité des blessures.

Plusieurs fabricants de brosses inscrivent quelques avertissements de sécurité, recommandations et limites d'utilisation sur le produit même. Il n'est pas toujours pratique d'inscrire des recommandations de sécurité, même très brèves, sur la brosse. L'utilisateur DOIT donc LIRE et SUIVRE toutes les instructions inscrites sur et dans l'emballage du produit, ainsi que celles sur le produit. L'utilisateur doit également se référer aux informations de sécurité et d'utilisation figurant dans le catalogue du fabricant de brosses et dans d'autres ouvrages.

**LISEZ CETTE NOTICE DE SÉCURITÉ - RECTO ET VERSO!**

---

**ADVERTENCIA** El no observar las normas de seguridad puede causar **LESIONES**

**Resumen - Requisitos de seguridad para cepillos industriales**

1. **Protección de Ojo:** Todos los operadores y otras personas presentes en la zona de operación de los cepillos deben usar gafas de seguridad o máscaras faciales completas sobre gafas protectoras con pantallas laterales. Observe los requisitos de ANSI Z87.1 ("Occupational eye and face protection")

2. **Resguardos:** Use todos los resguardos de la maquina.

3. **Velocidad:** Observe las restricciones de velocidad en el cepillo, cajas, instrucciones, o instrucciones en otra literatura o manuales pertinentes. "MSFS ó MAX. SFS" significa máxima velocidad segura (R.P.M.) - rotando libremente sin aplicar la pieza de trabajo. Por razones de seguridad, nunca exceda la "MSFS/MAX. SFS."

4. **Normas de seguridad:** Obedezca las normas de seguridad del Instituto Nacional Americano de normas (American National Standards Institute), ANSI B165.1 "requisitos de seguridad - cepillos industriales".

5. **Equipo Protector:** Ropa protectora apropiada y equipo protector (como gafas de seguridad con pantallas laterales, guantes, aparato respirador, etc.) deben usarse cuando la posibilidad de lesiones que se pueden prevenir con este equipo exista.

**Advertencia:** En operaciones normales del cepillo, el material que se remueve, como rebabas, escoria, mugre, escoria de soldadura, y otro residuos, se desprenderán del cepillo con fuerza considerable junto con alambres que se rompen por fatiga.

*El riesgo de lesiones serias existe para el operador y otros en la zona (posiblemente 50 pies - 15 m. - del cepillo).* Para protección contra este peligro, antes de rotar el cepillo, durante rotación, y hasta que el cepillo se detenga, operadores y otros en la zona deben usar GAFAS DE SEGURIDAD o GAFAS DE SEGURIDAD CON PANTALLAS PROTECTORAS LATERALES, junto con ROPA PROTECTORA.

Obedezca instrucciones para el uso, instrucciones de seguridad, y también otras precauciones comunes de seguridad que puedan reducir el riesgo o la severidad de lesiones.

Muchos fabricantes de cepillos marcan algunas advertencias de seguridad, recomendaciones, y restricciones de uso directamente en el producto. No es siempre posible incluir toda la información de seguridad en el cepillo. Por esta razón, antes de usar el cepillo, el operador DEBE LEER y SEGUIR todas las instrucciones suministradas adentro o adentro de la caja, y también las instrucciones marcadas en el producto. El operador también debe referirse a la información de operación y seguridad impresas en el cepillo o en el catálogo del fabricante, manuales, y otra literatura.

**LEA ESTA HOJA DE SEGURIDAD; LEA AMBOS LADOS!**

Black
IDr - BackOneFR1

 



**EXHIBIT**

A



 |K

## READ THIS SAFETY SLIP - BOTH SIDES!

### SAFETY INFORMATION AND USAGE RECOMMENDATIONS

**Pressure:** Avoid excessive pressure when using a power brush. Excessive pressure causes over-bending of the filaments and heat build-up resulting in filament breakage, rapid dulling, and reduced brush life. Instead of greater pressure on a brush, it is suggested that you try (1) a brush with a more aggressive cutting action (increased wire size, decreased filament length, change to a different brush type, i.e., knot type instead of crimped wire type) or (2) higher speed (increased R.P.M., increased brush diameter). IMPORTANT NOTE: Never exceed the recommended MAXIMUM SAFE FREE SPEED R.P.M. (MSFS) rating of the brush.

**Inspection and storage:** Upon receipt, inspect brushes for damage, rust, and deterioration. Store in original containers in a clean, dry location. Do not allow distortion of brush filaments/components or foreign matter to become lodged in brush face.

**Dust and Fumes:** Wear respiratory protection against this hazard (see ANSI Z88.2).

**Instruction manual:** Read the instruction Manual of your tool (grinder) carefully before operation and follow it.

**Speed:** Make sure the maximum operating speed (Max. RPM) marked on the wire brush is at least as high as the "NO LOAD" speed shown on the name plate of the power tool.

**Starting the brush:** Before rotating the brush, during rotation, and until rotation stops, operators and others in the area must wear safety goggles, or full face shields worn over safety glasses with side shields. Brushes should be run at operating speed for at least one minute before applying work. Inspect for flutter or vibration that might be caused by poor installation or a damaged brush. During this time, no one is to stand in front of or in line with the brush.

**Mounting brushes:** Inspect brushes before mounting for damage, rust or other types of deterioration. Brush arbor hole and spindle diameter should be the same. Install the brush securely on the tool.

**Brushing problems:** Do Not Allow Unsafe Conditions to Continue - Occasionally, due to worn bearings, a bent spindle, an unusual application, operator abuse, or inappropriate use, a brush may fail. Do not use or continue to use a failed brush or one which is functioning improperly (i.e., throwing filaments, out-of-balance, etc.) as this increases the possibility for further brush failure and hazard of injury. The cause of the failure should be evaluated and corrected.

 ABMA
AMERICAN BRUSH
MANUFACTURERS
ASSOCIATION
info@abma.org
www.abma.org

This information is based on the collective experience of the ABMA Industrial Division members and provided solely as a public service for the guidance of the users of the members' products. These recommendations are not necessarily complete with respect to any particular application and common sense safety considerations should be adhered to generally. Any applicable federal, state, local law or regulation, must be strictly adhered to, and is controlling over any recommendation contained herein.

**AVAILABILITY OF ANSI STANDARDS**
On this slip reference is made to these ANSI Standards: ANSI B165.1, ANSI Z87.1, ANSI Z88.2. Copies of these standards are available at Public Libraries and from American National Standards Institute, Inc. (ANSI), 1430 Broadway, New York, NY 10018, or; American Brush Manufacturers' Association.

### READ THIS SAFETY SLIP — BOTH SIDES!

Form Reorder #AB-1    Rev. 9/10    Printed in U.S.A.
©ABMA 2003. All Rights Reserved.

---

## LISEZ CETTE NOTICE DE SÉCURITÉ - RECTO ET VERSO!

### MESURES DE SÉCURITÉ ET MODE D'EMPLOI

**Pression:** Évitez toute pression excessive durant l'utilisation de la brosse électrique. La pression excessive provoque une courbure excessive des filaments et une accumulation de chaleur qui cassent les filaments, émoussent et usent rapidement la brosse. Au lieu de forcer la pression sur la brosse, il est recommandé d'essayer (1) une brosse plus tranchante (fil plus gros, filament moins long, type de brosse différent, par ex. brosse à nœuds ou en fil ondulé, ou (2) d'augmenter la vitesse (augmentation des tr/mn, augmentation du diamètre de la brosse). NOTE IMPORTANTE: Ne dépassez jamais l'indice de la nombre de TR/MN DE VITESSE LIBRE MAXIMUM DE SÉCURITÉ (MFSF) recommandé pour la brosse.

**Inspection et entreposage:** À la réception, inspectez les brosses pour tout dommage, rouille ou détérioration. Entreposer dans l'emballage original, dans un endroit propre et sec. S'assurer que les filaments des brosses ou des accessoires ne pourront pas se déformer et qu'aucun corps étranger ne pourra se loger dans la brosse.

**Poussière et émanations:** porter l'équipement respiratoire approprié pour ce genre de danger (voir ANSI Z88.2).

**Manuel d'instruction:** bien lire le manuel d'instruction pour l'outil (meuleuse) avant de l'utiliser et bien suivre les instructions.

**Vitesse:** s'assurer que la vitesse maximale d'opération (tr/mn max.) inscrite sur la brosse métallique est au moins aussi élevée que la vitesse "NO LOAD" vitesse à vide" indiquée sur la plaque signalétique de l'outil électrique.

**Démarrage de la brosse:** lors du fonctionnement d'une brosse, et jusqu'à son arrêt complet, l'utilisateur ainsi que toutes les personnes se trouvant à proximité doivent porter des lunettes de protection ou des lunettes latérales munie d'un masque facial avec écrans de protection latéraux. Les brosses doivent tourner à la vitesse de fonctionnement pendant au moins une minute avant d'être utilisées. Vérifier tout flottement ou vibration qui pourrait être causé par une mauvaise installation ou une brosse endommagée. Lors de cette vérification, personne ne doit se tenir devant ou dans l'alignement de la brosse.

**Montage de la brosse:** inspecter les brosses avant le montage pour s'assurer qu'elles ne sont pas endommagées, rouillées ou détériorées de quelque manière que ce soit. Le diamètre du mandrin, et de l'orifice d'arbre de la brosse doivent être les mêmes. Bien installer la brosse sur l'outil.

**Problèmes de brossage:** ne maintenez pas de conditions d'utilisation dangereuses. Une brosse peut parfois ne pas fonctionner correctement du fait de l'usure des roulements, d'un axe tordu, d'une application inhabituelle ou lors d'une utilisation abusive ou incorrecte. N'utilisez pas ne continuez pas d'utiliser une brosse défectueuse ou qui fonctionne mal (par ex. perdant des filaments, déséquilibrée etc.), car ceci augmente les possibilités de panne ultérieure et les risques de blessure. La cause de cette défaillance doit être déterminée et corrigée.

 ABMA
AMERICAN BRUSH
MANUFACTURERS
ASSOCIATION
info@abma.org
www.abma.org

Ces informations est basée sur l'expérience de l'ensemble des membres de la Division la Industrielle de l'ABMA. Il s'agit d'un service public destiné à aider les utilisateurs des produits de ses membres. Ces recommandations ne couvrent pas nécessairement toutes les applications particulières, et les considérations de sécurité dictées par le bon sens doivent rester généralement valables. Toute loi ou réglementation fédérale, provinciale ou locale applicable doit être strictement observée et prévaut sur les recommandations du présent document.

**OÙ TROUVER LES NORMES ANSI**
Les normes ANSI auxquelles cette notice se réfère sont: ANSI B165.1, ANSI Z87.1, ANSI Z88.2. Des copies de ces normes peuvent être obtenues auprès des bibliothèques municipales et de l'Institut national américain de normalisation, (ANSI), 1430 Broadway, New York, NY 10018; ou auprès de l'Association américaine des fabricants de brosses.

### LISEZ CETTE NOTICE DE SÉCURITÉ — RECTO ET VERSO!

Notice N° AB-1    Rev. 9/10    Imprimée aux États-Unis
©ABMA 2003. Tous droits réservés.

---

## LEA ESTA HOJA DE SEGURIDAD - EN AMBOS LADOS

### INFORMACIÓN DE SEGURIDAD Y RECOMENDACIONES PARA EL USO

**Presión:** Evite presión excesiva cuando use el cepillo. La presión excesiva dobla los filamentos y causa fricción resultando en recalentamiento excesivo de los filamentos, rápida pérdida de afilado, y reducción de la vida del cepillo. Se recomienda que en vez de presión excesiva se trate lo siguiente: (1) un cepillo con acción de corte superior (incremente el diámetro del alambre, use un filamento más corto, use un tipo diferente de cepillo, (ejemplo: tipo trenza en vez de tipo rizo), (2) velocidades más altas (incremente R.P.M., incremente el diámetro del cepillo). NOTA IMPORTANTE: Nunca exceda la velocidad máxima recomendada R.P.M. (MSFS) del cepillo.

**Inspección y almacenamiento:** Cuando reciba el cepillo, determine si está dañado, oxidado o deteriorado. Almacene el cepillo en el empaque original en un lugar limpio y seco. No permita la distorsión de los filamentos/componentes o que contaminantes se incrusten en el cepillo.

**Polvo y vapores:** Use protectores de respiración contra este peligro (Vea ANSI Z88.2).

**Manual de instrucción:** Lea el manual de instrucción de su herramienta (pulidora) cuidadosamente. Cumpla con sus instrucciones.

**Velocidad:** Esté seguro que la velocidad máxima (Max. RPM) - velocidad de la herramienta sin accesorio - marcada en la herramienta no exceda la velocidad máxima recomendada en el cepillo.

**Empezando el cepillo:** Antes de empezar el cepillo, cuando esté rotando, y hasta que el cepillo se detenga, operadores y otros en la zona deben usar gafas de seguridad, o caretas de protección con pantallas laterales sobre gafas de seguridad. El cepillo debe girar libremente al menos un minuto antes de empezar el trabajo. Inspeccione por movimiento irregular (ondeo) o vibración que puede ser causada por mal montaje o un cepillo dañado. Durante esta inspección, nadie debe estar en frente o en línea con el cepillo.

**Montando el cepillo:** Determine si existe daño, oxido u otros problemas con el cepillo antes de montarlo. El eje del cepillo debe ser del mismo tamaño que el tamaño de la flecha de la herramienta. Instale el cepillo de la manera apropiada en la herramienta.

**Problemas de Cepillado:** No permita que prácticas peligrosas continúen - De vez en cuando, rodilleros (cojinetes) gastados, ejes torcidos, aplicaciones poco usuales, abuso o uso incorrecto por parte del operador, pueden conducir a la falta del cepillo. No use o continúe el uso de un cepillo dañado o un cepillo que no funciona apropiadamente (ejemplo: tirando filamentos, o fuera de balance, etc.), esto incrementa la posibilidad de la falta del cepillo y peligro de lesiones. La causa de la falla debe ser evaluada y corregida inmediatamente.

 ABMA
AMERICAN BRUSH
MANUFACTURERS
ASSOCIATION
info@abma.org
www.abma.org

Esta información está basada en la experiencia colectiva de los miembros de la división industrial de ABMA y provista solamente como un servicio público para los usuarios de los productos de los miembros. Estas recomendaciones no son necesariamente completas para todo tipo de aplicaciones, observe todas las normas de seguridad y use sentido común. Cualquier ley o norma Federal, Estatal, y Local que apliquen deben ser estrictamente obedecidas. Estas leyes controlan las recomendaciones en esta hoja.

**DISPOSICIÓN DE LAS NORMAS DE ANSI**
Esta hoja hace referencia a las siguientes normas ANSI: ANSI B165.1, ANSI Z87.1, ANSI Z88.2. Copias de estas normas se encuentran en librerías públicas y en el Instituto Nacional Americano de Estándares, Inc. (ANSI), 1430 Broadway, New York, N.Y. 10018, o, en la Asociación Americana de Fabricantes de Cepillos.

### LEA ESTA HOJA DE SEGURIDAD; LEA AMBOS LADOS!

Ordene forma #AB-1    Rev. 9/10    Impreso en los E.U.
©ABMA 2003. Derechos reservados.





Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

## United States Patent and Trademark Office

Reg. No. 3,186,484
Registered Dec. 19, 2006

## SERVICE MARK
### PRINCIPAL REGISTER



AMERICAN BRUSH MANUFACTURERS ASSO-
CIATION (PENNSYLVANIA CORPORATION)
SUITE 274
2111 PLUM STREET
AURORA, IL 60506

FOR: ASSOCIATION SERVICES, NAMELY, PRO-
MOTING THE INTERESTS OF AMERICAN BRUSH
MANUFACTURERS, IN CLASS 35 (U.S. CLS. 100, 101
AND 102).

FIRST USE 11-16-1988; IN COMMERCE 11-16-1988.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "AMERICAN BRUSH MANUFAC-
TURERS ASSOCIATION", APART FROM THE
MARK AS SHOWN.

THE COLOR(S) BLUE AND RED IS/ARE
CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF STYLIZED LETTER-
ING ABMA, WITH ABM APPEARING IN THE
COLOR BLUE AND A APPEARING IN THE COLOR
RED, APPEARING ADJACENT TO STYLIZED LET-
TERING AMERICAN BRUSH MANUFACTURING
ASSOCIATION, WITH SUCH LETTERING APPEAR-
ING IN THE COLOR BLUE. THE MARK MAY ALSO
APPEAR IN IDENTICAL DESIGN, IN BLACK AND
WHITE, IF REPRODUCED WITHOUT COLOR.

SER. NO. 78-775,873, FILED 12-19-2005.

RAMONA ORTIGA, EXAMINING ATTORNEY



EXHIBIT

B

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-379-471

**Effective date of registration:**

May 20, 2011

## Title

| | |
|---|---|
| **Title of Work:** | untitled, may be identified as: "American Brush Manufacturers Summary of Safety Requirements-Safety Slip" |
| **Previous or Alternative Title:** | American Brush Manufacturers Summary of Safety Requirements-Safety Slip |

## Completion/Publication

| | | | |
|---|---|---|---|
| **Year of Completion:** | 2010 | | |
| **Date of 1st Publication:** | September 2, 2010 | **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| ■     **Author:** | American Brush Manufacturers Association |
| **Author Created:** | additional and revised text, editing |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |

## Copyright claimant

| | |
|---|---|
| **Copyright Claimant:** | American Brush Manufacturers Association |
| | 2111 Plum St. Suite 274, Aurora, IL, 60506, United States |

## Limitation of copyright claim

| | |
|---|---|
| **Material excluded from this claim:** | previous edition of work |
| **New material included in claim:** | additional and revised text, editing |

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | American Brush Manufacturers Association |
| **Address:** | 2111 Plum St. Suite 274 |
| | Aurora, IL 60506  United States |

## Certification



EXHIBIT

C

Page 1 of 2

**Name:** Catherine E. Malesky

**Date:** May 13, 2011

**Correspondence:** Yes

